IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY STEELE** | : | |
| Petitioner, | : | NO. 3:99-CV-1256 |
| v. | : | (CHIEF JUDGE VANASKIE) |
| J. SCOTT BLACKMAN, Immigration and Naturalization District Director | : | FILED SCRANTON |
| Respondent. | : | JAN 1 4 2000 |

## MEMORANDUM

Before this Court is the habeas corpus petition of Gary Steele ("Steele"), whom the Immigration and Naturalization Service ("INS") currently detains in York County Prison in York, Pennsylvania. Steele challenges both the validity of a Final Order of Removal issued by the Board of Immigration Appeals ("BIA") and the constitutionality of his continued detention.

As to the removal order, Steele contends that his New York state convictions for trafficking in marijuana do not qualify as "aggravated felony convictions," so that he remains eligible to request a "hardship" waiver of removal under § 212(h) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(h), as well as cancellation of removal under § 240A(a) of the INA, 8 U.S.C. § 1229b. Steele further maintains that the BIA committed error of a constitutional magnitude in holding that he was not entitled to consideration of discretionary waiver of removal because of the 1996 amendments to 8 U.S.C. § 1182(c), even though Steele would have been entitled to such consideration at the time he was convicted of the narcotics trafficking offenses that formed the predicate for

the removal order and that now preclude discretionary waiver of removal. As to the validity of his continued detention, Steele argues that he has not received an individualized assessment of risk of flight and danger to the community that due process demands.

Having carefully considered the record and the pertinent authorities, I find that Steele's state court convictions involving distribution of marijuana do constitute "aggravated felonies" as defined in the INA, and that the BIA correctly concluded that legislative changes effected in 1996 disentitled Steele to consideration for a discretionary waiver under 8 U.S.C. § 1182(c). I further find that Steele has failed to pursue available administrative avenues to obtain the individualized assessment of flight risk and community threat that he demands. Accordingly, his petition will be denied.

## I. BACKGROUND

### A. Facts

Steele is a native and citizen of Grenada. He has been a lawful permanent resident of the United States since February 1, 1981. Two of his children are United States citizens. He has four sisters and three brothers living in the United States, and they are all United States citizens.

Steele was convicted twice for the criminal sale of marijuana in the fourth degree: on October 29, 1991, and April 7, 1993.[1] For the first offense, he was sentenced to three years probation. The second time he was sentenced to 30 days in jail or a fine. Further,

---

[1] NY Penal Law § 221.40 (Consol. 1999) holds that "[a] person is guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana except as provided in section 221.35 of this article." Such a sale is "a class A misdemeanor." Id. "Sentence of imprisonment for a class A misdemeanor shall be a definite sentence. When such a sentence is imposed the term shall be fixed by the court, and shall not exceed one year; . . . ." NY Penal Law § 70.15 (Consol. 1999).

2

on February 8, 1994, he was convicted and sentenced for criminal possession of marijuana. All of his convictions were in the state of New York.

On February 19, 1998, Steele was returning from Grenada to the United States, via JFK Airport ("JFK") in New York City. He applied for admission as a legal permanent resident. At JFK, INS agents detained and questioned Steele. Steele admitted that he had previously been convicted of the controlled substance offenses, and INS investigators charged him with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II) (persons convicted of controlled substance offenses deemed inadmissible) and 8 U.S.C. § 1182(a)(2)(C) (persons known or reasonably suspected to be drug traffickers deemed inadmissible).

### B. Procedural History

On April 16, 1998, an Immigration Judge ("IJ") found that Steele was an "inadmissible alien" as charged because of his previous convictions. Steele appealed that decision to the BIA. The BIA heard Steele's appeal, and on May 7, 1999, denied it, agreeing with the IJ that Steele was an "arriving alien" per 8 C.F.R. § 1.1(q) and that his convictions rendered him an alien seeking admission despite his lawful permanent resident status. See 8 U.S.C. § 1101(a)(13)(C)(v). The BIA also agreed with the IJ that Steele's convictions for the criminal sale of marihuana qualified as aggravated felonies. Finding that 1996 legislative amendments to the INA rendered Steele ineligible for a discretionary waiver of removal under 8 U.S.C. § 1182(c), the BIA issued a Final Order of Removal. On May 21, 1999, Steele filed a petition for review in the Third Circuit Court of Appeals. On July 22, 1999, the Third Circuit dismissed Steele's petition for lack of jurisdiction.[2]

---

[2] Steele had not opposed INS's motion to dismiss. See Resp't's Return in Opp'n to
(continued...)

3

Before the Third Circuit's decision was issued, Steele filed his habeas petition with this Court on July 6, 1999, naming J. Scott Blackman, District Director of INS, as Respondent ("INS"). (Dkt. Entry 1.) By Order of this Court, dated July 26, 1999, Steele's removal from the United States was stayed. (Dkt. Entry 3.) On August 9, 1999, Steele filed a Brief in Support of his petition. (Dkt. Entry 6.) On August 10, 1999, INS filed a "Return" in Opposition to Steele's petition. (Dkt. Entry 8.) And on August 23, 1999, INS filed a Brief in Opposition to Steele's petition. (Dkt. Entry 9.)

## II. DISCUSSION

### A. Jurisdiction

Steele's habeas corpus petition challenges both the validity of the removal order as well as the constitutionality of his detention pending execution of the removal order. As to the latter issue, jurisdiction under 28 U.S.C. § 2241 plainly exists. See Ngo v. Immigration & Naturalization Serv., 192 F.3d 390, 393 (3d Cir. 1999); Zadvydas v. Underdown, 185 F.3d 279, 285-86 (5th Cir. 1999); Vo v. Greene, 63 F. Supp.2d 1278, 1281 (D. Colo. 1999); Phan v. Reno, 56 F. Supp.2d 1149, 1152 (W.D. Wash. 1999). As to the challenge to the validity of the removal order, however, existence of jurisdiction is problematic.

Although jurisdiction under 28 U.S.C. § 2241 to consider Steele's challenge to the removal order is not clear, see 8 U.S.C. § 1252(a)(2)(C)("no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having [an aggravated felony conviction]"), the reasoning of Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999), and Catney v. Immigration & Naturalization Serv., 178 F.3d 190 (3d Cir. 1999),

---

[2](...continued)
Pet. for Writ of Habeas Corpus, Dkt. Entry 8, Ex. C.

4

is broad enough to support the exercise of jurisdiction over Steele's constitutional challenge to the removal order. In <u>Sandoval</u>, the court concluded that there existed habeas corpus jurisdiction to address a criminal alien's contention that his constitutional rights were violated by the refusal of the INS to consider him eligible for a discretionary waiver of removal under § 212(c) of the INA. In reaching this result, the court stated, "nothing less than an express statement of congressional intent is required before a grant of habeas corpus jurisdiction as provided in 28 U.S.C. § 2241 will be found to have been repealed." 166 F.3d at 237. The pertinent judicial review provision of the INA, codified at 8 U.S.C. § 1252, does not contain an explicit statement demonstrating a congressional intent to strip district courts of habeas jurisdiction under 28 U.S.C. § 2241. In <u>Catney</u>, a criminal alien sought to adjudicate by way of a petition for review from a final order of the BIA certain adverse determinations pertaining to application of legislative provisions. He also claimed that he was denied equal protection of the law. In holding that it did not have jurisdiction in light of § 1252(a)(2)(C), our Court of Appeals stated that "<u>any</u> challenge by a criminal alien to the [government's] interpretation of the immigration laws or to the constitutionality of these laws <u>must</u> be made through a habeas petition [in the district court]." 178 F.3d at 195 (emphasis added).[3]

While both <u>Sandoval</u> and <u>Catney</u> were decided during the period of time when "transitional rules" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009 (1996), were controlling, the rationale of

---

[3] Clearly, the same judicial review bar considered in <u>Catney</u>, 8 U.S.C. § 1252(a)(2)(C), impelled dismissal of Steele's Third Circuit petition for review in this case. As in <u>Catney</u>, therefore, Steele is relegated to habeas corpus relief under § 2241.

5

Sandoval and Catney extends to immigration proceedings brought under the permanent provisions of IIRIRA. In this regard, there is nothing in the legislative provisions barring judicial review at issue in Sandoval and Catney that suggested that they were applicable only to transitional rule cases. Furthermore, the INS has not advanced any compelling reason as to why Sandoval and Catney should not pertain to post-transitional rules cases.

Contrary to the INS's contention, Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 119 S. Ct. 936, 142 L. Ed.2d 940 (1999), does not undermine Sandoval and Catney. In American-Arab, the Court held that INA § 2424(g), 8 U.S.C. § 1252(g), added in 1996 by IIRIRA, foreclosed federal court jurisdiction over a selective enforcement claim.[4] As pointed out in DeSousa v. Reno, 190 F.3d 175, 182 (3d Cir. 1999), the Court in American-Arab "explicitly rejected a broad interpretation of § 242(g) . . . ." Our Court of Appeals concluded that "[b]ecause § 242(g) only applies to suits challenging the government's selective enforcement of the immigration laws, and because DeSousa's case was not brought on this ground, § 242(g) does not bar his suit." Id. at 182-83.

Like DeSousa, Steele challenges the determination that he is ineligible for a discretionary waiver of removal under INA § 212(c). Because American-Arab did not foreclose judicial review of DeSousa's claims, it likewise does not bar consideration of Steele's claims. Accordingly, jurisdiction also will be exercised with respect to Steele's claims pertaining to the validity of the removal order.

---

[4] § 1252(a) reads: "(g) Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."

6

### B. The Merits

#### 1. The Validity of the Removal Order

Steele claims that INS has improperly labeled him an "aggravated felon." (Dkt. Entry 6 at 16 et seq.) The consequences of the "aggravated felon" label are serious: the Attorney General is precluded from considering Steele for a waiver of removal under 8 U.S.C. § 1182(h)[5] or § 1229b.[6] INS argues that 8 U.S.C. § 1101(a)(43)(B)[7] mandates that Steele be so labeled because Steele's previous convictions for sale of marijuana satisfy the criterion of "illicit trafficking in a controlled substance." (Id.)

In an attempt to refute his "aggravated felon" label, Steele emphasizes that his convictions were for "nothing more than simple possession of marijuana as there is no evidence of record that [his] offenses involved remuneration." (Dkt. Entry 6 at 17.) Relying on the BIA's decision in Matter of L- G-, I & N. Int. Dec. 3254, 1995 BIA Lexis 19 (1995), Steele argues that such convictions do not parallel the federal code in a way that it is fair for INS to label him an aggravated felon. Overlooking the careful wording of his argument that avoids a straightforward averment that his convictions did not, in fact, involve remuneration, Steele's reliance on Matter of L- G- is nevertheless misplaced.

---

[5] Section 1182(h) allows the Attorney General discretion to waive removal of aliens in certain circumstances; however, it also limits that discretion: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ."

[6] Section 1229b(a)(3) has a similar limitation, precluding the Attorney General's cancellation of removal for an alien who has "been convicted of an aggravated felony."

[7] Section 1101(a)(43)(B) defines an aggravated felony as "illicit trafficking in a controlled substance . . . ."

7

Matter of L- G- involved an alien who had been convicted of a single possession drug offense in Louisiana. The offense was classified as a felony under Louisiana law, but the parallel federal code would have classified it a misdemeanor. Id. at *3, *16-17. The decision considered "whether the respondent's drug offense qualifies as an aggravated felony under our immigration laws simply because it is classified as a felony under Louisiana law." Id. at *5.

Matter of L- G- held that "a state drug conviction could be considered a conviction for a 'drug trafficking crime,' and therefore an aggravated felony, if the underlying offense was analogous to a felony under the federal drug laws." Id. at *3. That panel went on to note, "[i]f the defendant has any prior drug convictions, simple possession of any controlled substance is also a felony conviction under 21 U.S.C. § 844(a)." Id. at *4.

Applying this holding to Steele's circumstances is straightforward. Steele has been convicted of three drug offenses, two for sale and one for possession. Matter of L- G- is unequivocal on this issue:

> If the state offense could have been punished under the federal drug laws by a maximum term of imprisonment in excess of 1 year, i.e., if the analogous drug offense is classified as a "felony" under federal law, it satisfies the definition of a "drug trafficking crime" within the meaning of section 101(a)(43) of the Act. <u>Thus, even if a state drug offense has no clear nexus to "trafficking," it may be an aggravated felony under the Act, provided it is punishable as a felony under the federal drug laws. This is true regardless of the offense's classification under state law.</u>

Id. at *15 (emphasis added).

The BIA's reasoning is consistent with federal court decisions on this issue. For example, in United States v. Garcia-Olmedo, 112 F.3d 399 (9th Cir. 1997), the defendant

8

argued that his two prior convictions for marijuana possession did not constitute an "aggravated felony" for sentence enhancement purposes. In rejecting this argument, the Ninth Circuit explained:

> In order for Garcia-Olmedo's marijuana possession convictions to meet the definition of an aggravated felony, the offense must be (a) punishable under the Controlled Substances Act and (b) qualify as a felony. First, § 844(a) of the Controlled Substances Act states that a second conviction for possession of narcotics is punishable as a felony. . . .
> Second, a felony is defined under the Controlled Substances Act as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). Under 18 U.S.C. § 3559(a), an offense is a felony if the maximum term of imprisonment authorized for the offense is "more than one year." The maximum penalty under 21 U.S.C. § 844(a) for simple possession with a prior conviction is two years. Because Garcia-Olmedo had one prior conviction, the literal application of §§ 844(a) and 3559(a) render the 1990 and 1991 possession convictions felonies.
> Having satisfied the two prerequisites, Garcia-Olmedo's 1990 and 1991 convictions meet the definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43).

Id. at 400-01 (internal notes and citations omitted).

In Amaral v. Immigration & Naturalization Serv., 977 F.2d 33, 36 (1st Cir. 1992), the court held that an alien who had three prior simple possession convictions was properly classified as an "aggravated felon," explaining:

> The maximum penalty under 21 U.S.C. § 844(a) for simple possession without prior convictions is one year. Hence, absent prior convictions, simple possession is not a felony. However, one prior conviction turns possession into a felony since the maximum penalty increases to over a year. Here, Petitioner had two prior drug convictions which, under the literal application of §§ 844(a) and 3559(a), render the 1989 possession conviction a felony.

9

Thus, assuming, arguendo, that all of Steele's convictions were for simple possession, the United States code that parallels the New York criminal code would still result in Steele's being labeled an aggravated felon. Accordingly, INS properly labeled Steele an "aggravated felon." Accordingly, his habeas petition on the ground that INS denied him Due Process by so labeling him will be denied.

### 2. The Retroactive Application of §440(d)

Steele argues that he should be able to seek relief from removal under the now repealed INA §212(c), 8 U.S.C. § 1182(c).[8] First, this argument relies on his previous argument that INS mislabeled him an "aggravated felon." (Dkt. Entry 6 at 19.) As I discussed above, however, that label is justified.

Steele erroneously relies on Sandoval for the proposition that "elimination of 212(c) relief can occur prospectively only, not retroactively." (Dkt. Entry 6 at 20.) Sandoval, unlike the action sub judice, involved an alien who applied for the Attorney General's discretion

---

[8] As pointed out in the dissenting opinion of BIA member Lory Diana Rosenberg in this matter, the elimination of discretionary waiver of removal for persons such as Steele can be particularly harsh:

> "When applicable, [the elimination of the discretionary waiver] result[s] in the removal of 'criminal aliens,' particularly those convicted of offenses that are classified as 'aggravated felonies,' without regard to the fact that the convicted individual may have grown up in the United States from childhood or resided here for a significant period of time, that the majority of his family resides in the United States, that he may be completely unfamiliar with the language, culture and environment in the country to which he would be removed, that he or his family may face significant hardships resulting from his removal, or that he may be rehabilitated and demonstrate the potential to contribute to the welfare of his family and United States society."

10

before the new amendments limited the Attorney General's discretion. The Third Circuit noted "[t]he provision precluding discretionary relief for those convicted of drug offenses was not in effect at the time Sandoval sought to petition under INA §212(c)." Id. at 239. Here, by way of contrast, Steele did not have an application for discretionary relief pending at the time that § 212(c) relief was eliminated.

In Scheidemann v. Immigration and Naturalization Serv., 83 F.3d 1517, 1522 (3d Cir. 1996), the court noted, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." Scheidemann involved an alien who had been convicted of drug trafficking offense. At the time of his convictions, § 212(c) would have allowed him to apply for discretionary relief from deportation; however, subsequent to his convictions, but prior to his deportation proceedings, Congress eliminated potential relief for aliens such as Scheidemann. The BIA held that his convictions precluded his application for discretionary waiver of deportation under § 212(c). The BIA applied § 212(c) as it existed at the time of his deportation proceedings, and not as it existed at the time of his convictions. The Third Circuit affirmed that application.

Furthermore, the Third Circuit addressed forthrightly another of Steele's contentions, that he "was entitled to request a waiver at [the] time he was convicted and this fact could have been a factor in [his] decision to enter a plea." (Dkt. Entry 6 at 24.) In Scheidemann, the Third Circuit addressed this argument thus:

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the

11

> Attorney General's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States. Like statutes constricting the jurisdiction of a judicial body, these changes speak only to the power of a public agency. Finally, like legislation altering procedural rights, the relevant amendments in this case regulate secondary rather than primary conduct and infringe on no significant reliance interest. Given the facts that petitioner's pre-1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that §212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

Scheidemann, 83 F.3d at 1523.

In DeSousa v. Reno, 190 F.3d 175, 185-87 (3d Cir. 1999), our Court of Appeals, following the reasoning of Scheidemann, held that the elimination of discretionary relief from removal effected by § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), could be applied to pre-AEDPA convictions. Consistent with Scheidemann and DeSousa, the statutory bars on discretionary relief from removal could be applied to Steele, notwithstanding the fact that his conviction pre-dated the statutory bars. The law in the Third Circuit regarding this issue is therefore clear: Steele has no right to apply for the discretion available in the former §212(c). Accordingly, his habeas petition on these grounds will be denied.

### 3. Dentention Without Due Process

Steele argues that his "mandatory detention" under 8 U.S.C. §1226(c) is unlawful. (Dkt Entry 6 at 2-3, 9-15.) In answer to Steele's petition, INS responds: "Mr. Steele falls within the ambit of individuals for whom release consideration in the exercise of the

12

Attorney General's discretion is available. Thus, under INS' interpretation of INA §236(c) and IIRIRA §303(b)(2), Mr. Steele may apply to the INS director for release from detention . . . ." (Dkt. Entry 9 at 11.)[9]

Ordinarily, a person in federal custody "must exhaust available administrative remedies before seeking habeas corpus relief." United States ex rel. Sanders v. Arnold, 535 F.2d 848, 850 (3d Cir. 1976). The exhaustion doctrine advances several salutary purposes: (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise; (2) judicial time may be conserved because the agency might grant the relief sought; and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors. Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981). Exhaustion of administrative remedies, however, is not required where the administrative remedy is inadequate, pursuit of the remedy would be futile, or the agency action clearly abridges statutory or constitutional rights. Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

---

[9] It appears that because there has been a final removal order, Steele is not being held in custody pursuant to § 1226(c). Instead, it appears that he is being detained under 8 U.S.C. § 1231(a)(b), which generally authorizes detention of a criminal alien who has not been removed within 90 days of entry of the removal order. In this case, Steele has not been removed as a consequence of his judicial challenges to the removal order. Thus, Steele essentially holds the keys to the jail in his hands: if he does not contest the removal order, he will be transported from prison to Grenada. Courts have recognized that the INS may properly detain persons subject to a valid removal order "since the detention could rationally be seen as a necessary byproduct of the need to expel an unwanted alien rather than a punitive decision." Zadvydas v. Underdown, 185 F.3d 279, 290 (5th Cir. 1999); see also, Ngo v. Immigration and Naturalization Serv., 192 F.3d 390, 392 (3d Cir. 1999) (holding that aliens with criminal records may be detained for lengthy periods when removal is beyond the control of the INS, so long as adequate parole review procedures are in place). If Steele's detention becomes prolonged, he may be entitled to consideration for release under the rules described in Ngo.

To assess the applicability of the exhaustion doctrine in this case it is necessary to examine the statutory and regulatory framework within which a person subject to a final administrative order of removal is detained. The general statutory and regulatory framework was succinctly described in Abdul v. McElroy, No. 98-Civ. 2460, 1999 WL 58678, at *3 (S.D.N.Y. Feb. 4, 1999).

> Typically the Attorney General must accomplish the removal an alien within ninety days of the date on which the alien's order of removal becomes final. However, under section 241 of IIRIRA, the Attorney General may keep certain aliens in INS custody even after the ninety day removal period has elapsed. This group of aliens includes those who, like the petitioner, are 1) "present in the United States without being admitted or paroled, or who arrive[ ] in the United States at any time or place other than as designated by the Attorney General," or 2) have been convicted of "any law or regulation of a State . . . relating to a controlled substance . . . ." The regulations implementing section 241 of IIRIRA permit an INS district director to "continue in custody any alien inadmissible under section 212(a) of the Act . . . who presents a significant risk of noncompliance with the order of removal, beyond the [ninety day] removal period, as necessary, until removal from the United States." ("Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director."). However, an alien like the petitioner, who is inadmissible under section 212(a) of IIRIRA, may be released by the district director "[i]f such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk . . . ." The regulation lists nine non-exclusive factors for the district director to consider when determining whether to continue to detain an alien past the removal period. If the district director decides not to release an alien who is subject to an administratively final removal order pending that alien's deportation, the alien may, within 10 days, appeal the district director's decision to the Board of Immigration Appeals ("BIA").

(citations omitted).

14

The nine non-exclusive factors that are to be considered in determining whether an alien is to be released pending removal are:

> (1) the nature and seriousness of the alien's criminal convictions; (2) other criminal history; (3) sentence(s) imposed and time actually served; (4) history of failures to appear for court (defaults); (5) probation history; (6) disciplinary problems while incarcerated; (7) evidence of rehabilitative effort or recidivism; (8) equities in the United States; and (9) prior immigration violations and history.

8 C.F.R. §241.4(a). These factors are clearly pertinent to an assessment of whether a particular person properly in INS custody poses a risk of flight or danger to the community.

INS thus provides an administrative process for application of the non-exclusive list of factors in deciding whether to continue detention beyond the ninety day removal period. This process establishes a factual record that may facilitate judicial review as to the long-term detention of such a person. This system serves judicial economy when an alien is granted release in accordance with the conditions set forth in 8 C.F.R. § 241.5. Furthermore, the exhaustion requirement accords proper respect to the discretion Congress granted to the INS in deciding whom to release pending implementation of a final order of removal. Thus, the exhaustion doctrine requires resort to administrative review processes before filing a habeas corpus petition.

A number of district judges have required exhaustion of administrative processes before an alien may contest the validity of his detention beyond the removal period. See, e.g., Rodriguez v. McElroy, 53 F. Supp.2d 587 (S.D.N.Y. 1999); Oliva v. INS, No. 98-Civ. 6526, 1999 WL 61818 (S.D.N.Y. Feb. 10, 1999); Abdul v. McElroy, No. 98-Civ. 2460, 1999 WL 58678 (S.D.N.Y. Feb. 4, 1999); Lleo-Fernandez v. Immigration & Naturalization Serv., 989 F. Supp. 518, 519, (S.D.N.Y. 1998). In the case sub judice, Steele has not provided

15

any evidence that he invoked the INS administrative review process. Thus Steele's habeas corpus petition on the ground that his mandatory detention is illegal will be dismissed, without prejudice, for failure to exhaust administrative remedies.

## III. CONCLUSION

In accordance with the foregoing discussion, I find that this court does have jurisdiction over Steele's habeas petition under 28 U.S.C. §2241. I find that his petition lacks merit for the following reasons: 1) INS properly considered Steele an "aggravated felon" pursuant to 8 U.S.C. § 1101(a)(43)(B); 2) Steele is ineligible for discretionary relief under former INA §212(c), 8 U.S.C. § 1182(c); and 3) he has failed to exhaust his administrative remedies regarding his continuing detention. An appropriate order is attached.

_____
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

DATE: January 14, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY STEELE

    Petitioner, : NO. 3:99-CV-1256

  v. : (CHIEF JUDGE VANASKIE)

J. SCOTT BLACKMAN, Immigration and
Naturalization District Director

    Respondent.

## ORDER

NOW, THIS 14th DAY OF JANUARY, 2000, for the reasons set forth is the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Petitioner's Habeas Corpus Petition is **DENIED**.

2. The Stay of Removal imposed by Order dated July 25, 1999 is **VACATED**.

3. The Clerk of Court is directed to mark this matter **CLOSED**.

            Thomas I. Vanaskie, Chief Judge
            Middle District of Pennsylvania

O:\VANASKIE\ROBERTSO\ORDERS\Steele\order.wpd

17